UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEWIS HELFER, JENNIFER ELSTER-HELFER, AND COLLEEN HELFER,

Plaintiffs,

- against -

JPMORGAN CHASE BANK, N.A.,

Defendant.

Case No. 1:19-cv-0008-NRB

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

---

**SILLS CUMMIS & GROSS, P.C.**
Tyler J. Kandel, Esq.
Lauren C. Watson, Esq.
101 Park Avenue – 28th Floor
New York, New York 10178
(212) 643-7000
*Attorneys for Defendant
JPMorgan Chase Bank, N.A.*

## **TABLE OF CONTENTS**

**Page**

Preliminary Statement ................................................................................................. 1

Procedural History and Statement of Facts .................................................................. 2

Legal Argument ......................................................................................................... 10

I.   Chase Is Entitled To Summary Judgment Dismissing The Complaint In Its Entirety, With Prejudice, Pursuant To Rule 56 ................................................................ 10

   A.   Legal Standard ....................................................................................... 10

   B.   Chase Is Entitled To Summary Judgment Because Plaintiffs Are Contractually Prohibited From Storing Currency In The SDB ....................................... 12

   C.   Plaintiffs' First Cause Of Action, For Negligence, Is Factually And Legally Unsupported And Should Be Dismissed ................................................ 13

   D.   Plaintiffs Have Failed To Identify Any Facts Demonstrating That Chase Breached The Terms Of A Contract ........................................................ 14

   E.   Plaintiffs' Breach Of Bailment Claim Is Disclaimed Under The Lease And Contrary To New York Law .................................................................. 16

   F.   Plaintiffs Have Failed To Establish The Existence Of A Fiduciary Relationship ... 17

   G.   Plaintiffs' Conversion Claim Should Be Dismissed As A Matter Of Law ............. 18

   H.   Plaintiffs Cannot Establish That They Have Suffered Damages ........................... 19

   I.   Even If Plaintiffs' Could Establish A Cause Of Action Against Chase, Plaintiffs Damages Should Be Limited To $25,000 ................................. 21

   J.   Plaintiffs' Claim For Punitive Damages Fails, As A Matter Of Law ..................... 22

CONCLUSION ......................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.,*
  816 F. Supp. 2d 222 (S.D.N.Y 2011) ........................................................18

*767 Third Ave. LLC v. Greble & Finger, LLP,*
  8 A.D.3d 75, 778 N.Y.S.2d 157 (1st Dep't 2004) ..................................15

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n,*
  731 F.2d 112 (2d Cir. 1984) ........................................................................17

*Acevado v. Citibank, N.A.,*
  2012 U.S. Dist. LEXIS 40242 (S.D.N.Y. Mar. 23, 2012) ....................18

*Amusement Indus. v. Stern,*
  693 F. Supp. 2d 301 (S.D.N.Y. 2010) ......................................................23

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................10, 11

*Bank Leumi Trust Co. v. Block 3102 Corp.,*
  180 A.D.2d 588, 580 N.Y.S.2d 299 (1st Dep't 1992) ..........................17

*Barker v. Time Warner Cable, Inc.,*
  83 A.D.3d 750, 923 N.Y.S.2d 118 (2d Dep't 2011) .............................15

*Calisch Assoc., Inc. v Mfrs. Hanover Trust Co.,*
  151 A.D.2d 446, 542 N.Y.S.2d 644 (1st Dep't 1989) ..........................14

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ............................................................................10, 11

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.,*
  70 N.Y.2d 382, 516 N.E.2d 190 (1987) ..................................................18

*Colavito v. NY Organ Donor Network, Inc.,*
  8 N.Y.3d 43, 860 N.E.2d 713 (2006) .......................................................19

*Don Buchwald & Assocs. v. Rich,*
  281 A.D.2d 329, 723 N.Y.S.2d 8 (1st Dep't 2001) ...............................23

*Gayle v. Gonyea,*
  313 F.3d 677 (2d Cir. 2002) ........................................................................11

*Goldbaum v. Bank Leumi Trust Co.*,
    543 F. Supp. 434 (S.D.N.Y. 1982) ....................................................................22

*Golomb v. North Fork Bank*,
    824 N.Y.S.2d 754, 2006 N.Y. Misc. LEXIS 2691 (Dist. Ct. Nassau County
    2006) .............................................................................................................15, 20, 21

*Greco v. First Nat'l Bank Corp.*,
    267 A.D.2d. 278, 701 N.Y.S.2d 93 (2d Dep't 1999) ..........................................16

*Hartsko Fin. Servs., LLC v. JPMorgan Chase Bank, N.A.*,
    125 A.D.3d 448, 999 N.Y.S.2d 740 (1st Dep't 2015) .........................................14

*Martin v. Citibank, N.A.*,
    2008 N.Y. Misc. LEXIS 9631, 2008 NY Slip Op 33398(U) (Sup. Ct. N.Y.
    County Dec. 15, 2008) ........................................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...........................................................................................11

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*,
    315 F.3d 171 (2d Cir. 2003) ...............................................................................11

*Pappas v. Tzolis*,
    20 N.Y.3d 228 (2012) .........................................................................................19

*Pecoraro v M&T Bank Corp.*,
    11 A.D.3d 950 (4th Dep't 2004) ....................................................................17, 18

*Radelman v. Mfrs. Hanover Trust Co.*,
    61 Misc. 2d 669, 306 N.Y.S.2d 638 (2d Dep't 1969) .........................................12

*Rocanova v. Equitable Life Assur. Soc'y*,
    83 N.Y.2d 603, 634 N.E.2d 940 (1994).........................................................22, 23

*Rodriguez v. Banco Popular N. Am.*,
    2014 N.Y. Misc. LEXIS 3417, 2014 NY Slip Op. 32003[U] (Sup. Ct. Queens
    County June 10, 2014) ................................................................................12, 17, 19

*Sagendorph v First Natl. Bank*,
    218 A.D. 285, 1926 N.Y. App. Div. LEXIS 5916 (3d Dep't 1926) ......................14

*Sklover & Donath, LLC v. Eber-Schmid*,
    71 A.D.3d 497, 897 N.Y.S.2d 62 .......................................................................15

*Solicitor for Affairs of His Majesty's Treasury v. Bankers Tr. Co.*,
    304 N.Y. 282, 107 N.E.2d 448 (1952)..................................................................8

*Uribe v. Merchants Bank*,
     91 N.Y. 336, 693 N.E.2d 740 (1998)........................................................................13

*Walker v. Sheldon*,
     10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961)....................................23

**Statutes**

U.S.C. §§ 1332, 1441, and 1446 ..................................................................................2

Federal Rules of Civil Procedure Rule 56 ......................................................... *passim*

Defendant, JPMorgan Chase Bank, N.A. ("Chase"), by and through its counsel, Sills Cummis & Gross P.C., respectfully submits this Memorandum of Law, together with the Declaration of Tyler J. Kandel, dated April 22, 2020 (the "Kandel Decl."), and the exhibits annexed thereto, the Declaration of Traca Ruiz, dated April 2, 2020 (the "Ruiz Decl."), and the exhibits annexed thereto, the Declaration of Geoffery Andrews, dated April 15, 2020 (the "Andrews Decl.") and the exhibits annexed thereto, the Declaration of Peterson Chow, dated April 17, 2020 (the "Chow Decl.") and the exhibits annexed thereto, and Chase's Rule 56.1 Statement of Material Facts Not in Dispute, dated April 22, 2020 (the "Statement of Facts"), in support of Chase's Motion for Summary Judgment dismissing the Complaint, dated September 13, 2018 (the "Complaint", a copy of which is annexed to the Kandel Decl. as Exhibit "1"), filed by plaintiffs Lewis Helfer ("Lewis"), Jennifer Elster-Helfer ("Jennifer" and Colleen Helfer ("Colleen" and, together with Lewis and Jennifer, "Plaintiffs"), pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56").

## PRELIMINARY STATEMENT

Plaintiffs, co-lessees of safe deposit box No. 290 (the "SDB") at the Chase branch located at 331-337 South End Avenue, New York New York (the "Gateway Plaza Branch"), improperly seek to hold Chase responsible for $250,000 in cash – that was being stored in the SDB in violation of the Parties' agreement – that they claim was allegedly missing from the SDB when it was drilled after they failed to pay the annual rent.  Plaintiffs leased the SDB on April 13, 2001, pursuant to the terms of a written Lease of Safe Deposit Box Agreement, as amended periodically (the "Lease").  In April 2018, after Plaintiffs failed to pay rent on the SDB for two years, Chase terminated the Lease, and, pursuant to its contractual authority, drilled the SDB and removed and inventoried its contents, pursuant to its policies and procedures.

Plaintiffs allege, without a shred of supporting admissible evidence, that $250,000 in cash they claim was stored in the SDB -- in violation of the express terms and conditions of the Lease -- was missing when Plaintiffs retrieved the contents of the SDB in May 2018.  Plaintiffs purport to assert legally and factually unsupported and unsupportable causes of action for negligence, breach of contract, breach of bailment, breach of fiduciary duty, conversion, and the award of punitive damages.

As discussed herein, the Complaint should be dismissed in its entirety because, *inter alia,* Plaintiffs' claims are precluded by the contractual terms of the Lease.  Further, Plaintiffs have failed to, and cannot, identify any evidence corroborating Lewis' self-serving deposition testimony that the $250,000 was stored in the SDB, or that the cash was present in the SDB on the date that it was drilled.  Finally, even assuming *arguendo,* that Plaintiffs' were permitted to store currency in the SDB, and could establish that the cash was present in the SDB when it was drilled, the Lease limits Chase's liability to $25,000.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

Plaintiffs commenced this Action by filing a Summons and Complaint in the Supreme Court for the State of New York, New York County on November 16, 2018.  (*See* Kandel Decl., Exhibit "1").  On January 2, 2019, Chase filed a Notice of Removal, removing the Action to this Court pursuant to U.S.C. §§ 1332, 1441, and 1446.  (*See* Docket No. 1).  On January 9, 2019, Defendants filed an Answer and Affirmative Defenses (the "Answer").  (*See* Kandel Decl., Exhibit "2").

Plaintiffs allege that, on or about April 13, 2001, Plaintiffs leased the SDB.  (*See* Complaint, ¶ 3).  Pursuant to the Lease, the annual rent payment for the SDB was to be deducted automatically from a Chase checking account belonging to Colleen.  (*See id.* at ¶ 4).

The address provided for Lewis and Jennifer at the time the SDB was leased was 355 S. End Avenue, Apt. 34P, New York, New York, 10280-1005.  (*See* State of Facts, at ¶ 4; Chow Decl., at ¶ 5 and Exhibit "J"; Lewis Tr.[1] at 86:18-87:9).  The address provided for Colleen at the time the SDB was leased was 395 S. End Ave., Apt 10B, New York, New York 10280. (*See* Statement of Facts, at ¶ 5; Chow Decl., at ¶ 6; Lewis Tr. at 125:6-13).  Under the terms of the Lease, as amended (the "Amended Lease")[2], Plaintiffs are obligated to "notify [Chase] promptly of any change in address.  [Chase] may send written notice to you at the address we have on file." (*See* Statement of Facts at ¶ 8; Amended Lease at DEFENDANT 000089).  Since the SDB was opened in 2001, Chase has been mailing notices regarding the SDB to the addresses that it has on file for Plaintiffs in connection with the SDB, and Chase has no record of the notices sent regarding the SDB being returned as undeliverable.  (*See* Statement of Facts at ¶¶ 20-27; Andrews Decl.,at ¶ 9).

When Plaintiffs leased the SDB, they agreed under the Lease not to store cash in the SDB:

> Lessee agrees to store in the Safe only jewelry, securities and papers. Lessee agrees NOT to store any other property in the Safe including, without limitations, money (cash and coin (except for those of numismatic value)), whether or not legal tender, bullion and postage stamps.

(*See* Statement of Facts at ¶ 6; Kandel Decl., Exhibit "12" (the "Lease") at HELFER000001 ).[3]

---

[1] Relevant excerpts of transcript of the deposition of Lewis Helfer (the "Lewis Tr."), taken on September 16, 2019, are annexed as Exhibit "7" to the Kandel Decl.

[2] The Amended Lease is annexed as Exhibit "G" to the Andrews Decl.

[3] As of April 18, 2018, the date that the SDB was drilled by Chase for non-payment of rent, the Amended Lease still prohibited the storing of non-collectible currency in the SDB:

> You agree not to use the box to store money, coin or currency unless it is of a collectable nature, and you assume all risks and hold the Bank harmless of any loss or alleged loss of said money, coin or currency.

(*See* Statement of Facts at ¶ 7; Amended Lease at DEFENDANT 000086) (emphasis in original).

Further, the Amended Lease limits Chase's liability as follows:

> **Limitation of Liability:**  This lease does not create a bailor and bailee relationship between you and the Bank.  We do not have knowledge of and we do not exercise supervision over the box, or over examination or removal of any of its contents.  You assume all risks of injury, loss or damage of any kind (included but not limited to loss or damage due to fire, water, other mishap, robbery or burglary) arising out of the deposit of anything in the box, provided we have exercised ordinary care.  "Ordinary care" means the implementation by the Bank of access procedures and the use of security precautions deemed by the Bank to be reasonable and appropriate to safeguard of property.  The fact that any contents may be missing will neither imply that unauthorized access has been granted nor used as evidence of lack of ordinary care or negligence on our part.
>
> *          *          *          *
>
> **THE BANK WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, CONSEQUENTIAL OR EMOTIONAL DAMAGES REGARDLESS OF THE FORM OF ACTION. YOU AGREE AND REPRESENT THAT THE AGGREGATE VALUE OF THE CONTENTS OF THE BOX WILL NOT EXCEED $25,000 AT ANY TIME AND BASED ON THIS REPRESENTATION FURTHER ACKNOWLEDGE AND AGREE THAT THE BANK'S MAXIMUM LIABILITY, IF ANY, WILL BE LIMITED TO $25,000 WITH RESPECT TO ANY CLAIM ARISING OUT OF, OR OTHERWISE CONNECTED WITH, THIS AGREEMENT, THE BOX OR ITEMS STORED IN THE BOX.**

(*See* Amended Lease at DEFENDANT 000086; Statement of Facts at ¶ 9) (emphasis in original).

Finally, the Lease provides that:

> [Chase] may terminate this lease at any time by telling you verbally or mailing you written notice at the address that we have on file. Once notified you will remove the contents of the box, surrender all keys and pay all the fees due.  If you have not removed the contents and/or have not returned all keys on the date of termination of the lease, or if the annual rent has not been paid, we will, after observing the time prescribed by applicable law and/or regulation, gain access to the box and remove, list and store its contents as required by state law.

(*See* Statement of Facts at ¶ 10; Amended Lease at DEFENDANT 000085).

4

Plaintiffs claim that, "[i]n or about 2001, Plaintiffs deposited and stored cash in the sum of $250,000" in the SDB.  (*See* Complaint, at ¶ 11).  During his deposition, Lewis testified that, at the time it was allegedly deposited into the SDB, the cash was allegedly stored in a black, zippered case/envelope, and was entirely comprised of $100 bills (the "Black Case").  (*See* Statement of Facts at ¶ 11; Lewis Tr. at 49:2-50:5, 51:12-52:3).  Lewis also testified that he did not place all $250,000 in cash into the Black Case at one time.  Instead, he testified that he accumulated the money over a period time and, on dates on which he does not recall, placed the money into the Black Case, which he then placed into a safe deposit box maintained at the World Trade Center Chase Branch.  (*See* Statement of Facts at ¶ 12; Lewis Tr. at 45:11-48:19).

Lewis further testified that he subsequently transferred the Black Case from his safe deposit box at the World Trade Center Branch to one of the multiple safe deposit boxes that he maintained at the Gateway Plaza Branch – *not* box No. 290.  (*See* Statement of Facts at ¶ 13; Lewis Tr. at 47:7-52:12).  Again, on a date which Lewis could not recall, Lewis testified that he sealed the Black Case using masking tape.  (*Id.* at 50:1-52:3).  In or about April 2001, he moved the sealed Black Case into the SDB.  (*Id.* at 58:7-59:10).

Thus, Plaintiffs are unable to identify: (i) when the alleged $250,000 in cash was placed in the Black Case, (ii) when the Black Case was sealed, or (iii) when the Black Case was placed into the SDB.  Nor have Plaintiffs identified anyone, other than Lewis, who actually saw the alleged contents of the Black Case either prior to, or after, it was allegedly sealed and placed in the SDB, through the date that the SDB was drilled in April 2018.  (*See* Statement of Facts at ¶¶ 12-15, 18-19).

According to the Safe Deposit Box Access Record maintained by Chase, the only individual to access the SDB was Colleen, who accessed the SDB alone a total of nine times

between April 2001 and August 2011. (*See* Statement of Facts at ¶ 16; Chow Decl., Exhibit "H" at DEFENDANT 000073).  During her visits, Colleen testified that she would place cash into the vault as rent payments to Lewis for the use of his apartment during the summer months.  (*See* Colleen Tr.[4] at 29:19-30:16).  Significantly, Colleen could not recall seeing the contents of the Black Case when she accessed the SDB on any of the nine occasions. (*See* Statement of Facts at ¶ 18; Colleen Helfer Tr. at 45:7-14).

On or about April 21, 2017, Chase mailed Lewis a letter notifying him that there was an outstanding balance of $408.28 due for rental of the SDB for the period of April 15, 2017 to April 15, 2018 (the "April 2017 Letter"). (*See* Statement of Facts at ¶ 20).  Chase's records reflect that the April 2017 Letter was mailed to the address on file for the SDB; 355 S. End Avenue, Apt 34P, New York, New York 10280-1060.  (*See* Statement of Facts at ¶ 21; Andrews Decl., at ¶¶ 3-4 and Exhibit "A").

On or about May 19, 2017, Chase mailed letters to both Lewis and Colleen to the addresses on file for the SDB, notifying them that Chase had not received payment of the annual rent for the SDB.  (*See* Statement of Facts at ¶¶ 22-23; Andrews Decl., at ¶¶ 5-6, Exhibits "B" and "C"). Chase sent additional letters to both Lewis and Colleen at the addresses on file for the SDB on August 21, 2017, notifying them that the annual rent for the SDB was 128 days past due. (*See* Statement of Facts at ¶ 24; Andrews Decl., at ¶ 7, Exhibit "D").

Finally, on or about February 22, 2018, Chase mailed Lewis and Colleen final notices (the "Final Notices") notifying them that that the annual rent for the SDB was 313 days past due and that they "must immediately pay the balance due on this notice to avoid having . . . [the SDB]

---

[4] Relevant excerpts of the transcript of the deposition of Colleen Helfer (the "Colleen Tr."), taken on September 20, 2019, are annexed to the Kandel Decl. as Exhibit "9."

opened and your contents transferred to an offsite location." (*See* Statement of Facts at ¶¶ 25-26). Like the previous correspondence relating to the SDB, the Final Notices were mailed to the addresses on file for Lewis and Colleen for the SDB. (*See* Andrews Decl., at ¶ 8 and Exhibit "E"). Plaintiffs do not dispute that the safe deposit box annual rental payment was never made.

After Plaintiffs failed to pay the annual rent for the SDB for over one year, pursuant to Chase's contractual rights under the Amended Lease, the SDB was drilled on April 18, 2018, under dual control. (*See* Statement of Facts at ¶¶ 10, 28; Amended Lease at DEFENDANT 000085).

Pursuant to Chase's policies and procedures, the SDB was drilled by a locksmith in the presence of two Chase safe deposit box analysts, Lori Harwell ("Hartwell") and Nancy Scipio ("Scipio" and, together with Hartwell, the "Analysts"). (*See* Statement of Facts at ¶ 29; Ruiz Decl., ¶ 3 and Exhibit "F"). After the locksmith drilled the SDB, the Analysts opened the SDB, removed the contents and placed them in a tamper-proof bag that was marked as containing the contents of box 290. (*See* Statement of Facts at ¶ 31; Scipio Tr.[5] at 26:15-28:15). All three individuals were present in the vault for the entire drill process. (*See* Statement of Facts at ¶ 30; Scipio Tr. at 36:16-37:13).

The Analysts then took the bag containing the contents of the SDB to a private room, where they inventoried the contents. (*See* Statement of Facts at ¶ 32; Scipio Tr. at 35:24-37:19). During the inventory, the Analysts handled one bag at time, removed the contents of the bag and inputted descriptions of the contents on a Safe Deposit Box Forced Entry & Inventory form (the "Forced Entry Form"). (*See* Statement of Facts at ¶ 33; Scipio Tr. at 41:4-19). Each of Scipio and Hartwell reviewed the contents of each bag. (*See* Scipio Tr. at 42:725). Following Chase's policies and

---

[5] Relevant excerpts of the deposition transcript of Nanci Scipio, taken on October 7, 2019 (the "Scipio Tr.") is annexed to the Kandel Decl. as Exhibit "10".

procedures, the Analysts opened each envelope or container that had been stored in the SDB and inventoried the contents found therein on the Forced Entry Form.  (*See* Statement of Facts at ¶ 33; Scipio Tr. at 43:6-44:6; Ruiz Decl., at ¶ 2 and Exhibit "F" ).  When they found cash in the SDB, both of Analysts counted the cash separately.  (*See* Statement of Facts at ¶ 34; Scipio Tr. at 44:7-12).

Copies of the Forced Entry Form were placed into tamper-proof bags, which were then sealed. (*See* Statement of Facts at ¶ 35; Scipio Tr. at 55:20-56:7). The sealed tamper-proof bags were then placed into a cardboard box that the Analysts sealed with tape and placed into an orange Brinks bag.  (*See* Statement of Facts at ¶ 36; Scipio Tr. at 56:7-57:6). The Analysts then sealed the Brinks bag and placed it in the branch vault to be picked up by Brinks and delivered to Chase's National Vault in Texas via armored carrier. (*See* Statement of Facts at ¶ 37; Scipio Tr. at 57:7-58:5).

After the SDB was drilled and its contents inventoried, on April 18, 2018, Chase sent Plaintiffs a letter, via overnight UPS delivery, notifying Plaintiffs that the SDB had been drilled (the "Notice of Drilling"). (*See* Statement of Facts at ¶ 38). The Notice of Drilling included the forced inventory form completed by Hartwell and Scipio, setting forth the contents of the SDB and providing information regarding the procedure to reclaim the contents.  (*See* Statement of Facts at ¶ 39; Scipio Tr. at 70:12-71:25, 73:11-76:25).  The Notice of Drilling was mailed to 355 S. End Avenue, New York, New York 10280-1005.  (*See* Statement of Facts at ¶ 40).

Lewis testified that he received the Notice of Drilling on or about April 20, 2019.  (*See* Statement of Facts at ¶ 41; Lewis Tr. at 85:12-86:8). Lewis further testified that the doorman at 355 S. End Avenue received the Notice of Drilling and gave the Notice of Drilling to Elizabeth Alexander, the woman who leased Apartment 34P from Lewis, who then called him to notify him

that she had received a UPS delivery addressed to him. (*See* Statement of Facts at 42; Lewis Tr. at 85:16-24, 126-128).  Lewis retrieved the Notice of Drilling and learned that the SDB had been drilled.  (*See* Lewis Tr. at 85:8-21, 126:16-129:5).  Lewis subsequently contacted Chase by telephone several times to discuss the drilling of the SDB and the procedure to reclaim the contents. (*See* Statement of Facts at ¶ 43; Lewis Tr. at 85:24-86:8, 129:14-23, 132:20-136:6; Frias Tr. at 72:11-73:14).

Plaintiffs claim that they moved from 355 South End Avenue, Apartment 34P, New York, New York to 75 Leonard Street, New York, New York in 2004. (*See* Lewis Tr. at 87:10-25). Plaintiffs further claim that they verbally informed Chase of their new address for all of their accounts.  (*Id.* at 87:10-88:25).  However, Plaintiffs acknowledge that they still received correspondence from Chase at the 355 South End Avenue address following their move to Leonard Street and their alleged notification to Chase of their change of address.  (*Id.*).  Further, Chase has not located any record of Plaintiffs notifying Chase that the address associated with the SDB should be changed to 75 Leonard Street. (*See* Chow Decl., at ¶ 7).

Similarly, Colleen Helfer claims that she moved from 395 S. End Ave., Apt 10B to Florida following September 11, 2001, but that she would often spend the summers staying in Lewis' apartment at 355 South End Avenue, Apartment 34P until she permanently moved to Florida in 2010. (*See* Colleen Tr. at 9:2-12:9).  Significantly, Chase has not located any record of Colleen notifying Chase that the address associated with the SDB should be changed. (*See* Chow Decl., at ¶ 7).

On May 2, 2019, Lewis and Jennifer visited the Gateway Plaza Branch and reclaimed the contents of the SDB, which included $75,580 in cash.[6] (*See* Statement of Facts at ¶ 44; Frias Tr. at 88:5-89:8, 94:20-98:17; Lewis Tr. at 138:12-17; Kandel Decl.,Exhibit G at DEFENDANT 001296-1300). Plaintiffs retrieved the contents of the SDB and left the Gateway Plaza Branch, without mentioning to anyone, including each other, that *any* property, much less $250,000 in cash, was missing from the SDB. (*See* Statement of Facts at ¶ 45; Lewis Tr. at 136:7-138:17). In fact, at no time prior to the commencement of this Action did any of the Plaintiffs or their counsel notify Chase that any of their property, or cash, was missing when they reclaimed the contents of the SDB. (*See* Statement of Facts at ¶ 46; Lewis Tr. at 136:7- 139:7). Moreover, Lewis testified at his deposition that, upon the advice of counsel, he did not file a police report regarding his claim that $250,000 in cash had been stolen from the SDB. (Lewis Tr. at 139:8-24). (*See* Statement of Facts at ¶ 47; Lewis Tr. at 139:8-140:12).

For the reasons discussed herein, Chase respectfully requests that this Court grant its Motion for summary judgment dismissing this Action, with prejudice.

## LEGAL ARGUMENT

### I. CHASE IS ENTITLED TO SUMMARY JUDGMENT DISMISSING THE COMPLAINT IN ITS ENTIRETY, WITH PREJUDICE, PURSUANT TO RULE 56

#### A. Legal Standard

Summary judgment is appropriate where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*

---

[6] Significantly, Plaintiffs argue that a Chase employee must have stolen the $250,000 in cash that was contained in a sealed Black Case while leaving behind the remaining $75,580 that was not in the Black Case, and had presumably been left by Collen as rent payments to Lewis.

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 248.  In that regard, "[a]n issue of fact is genuine only 'if the evidence is such that a jury could return a verdict for the nonmoving party.'"  *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)).  To defeat a summary judgment motion, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact. The 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem*., *Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (internal citations omitted).

As discussed herein, Chase has established that there is patently insufficient evidence, admissible or otherwise, to support Plaintiffs' allegations and claims, and Plaintiffs cannot sustain their burden to identify the existence of any genuine issues of material fact to be tried. Accordingly, Chase is entitled to dismissal of the Complaint in its entirety, pursuant to Rule 56. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

**B.      Chase Is Entitled To Summary Judgment Because Plaintiffs Are Contractually Prohibited From Storing Currency In The SDB**

First and foremost, Plaintiffs are precluded from maintaining this Action on the ground that Plaintiffs are prohibited under the Lease from storing money or non-collectible currency in the SDB.   In that regard, the Lease expressly provides that "Lessee agrees to store in the Safe only jewelry, securities and papers. Lessee agrees NOT to store any other property in the Safe including, without limitations, money (cash and coin (except for those of numismatic value)), whether or not legal tender, bullion and postage stamps." (*See* Statement of Facts at ¶ 6; Lease at HELFER000001).   Similarly, as of April 2018, when the SDB was drilled, the Amended Lease states: "You agree not to use the box to store money, coin or currency unless it is of a collectable nature, and you assume all risks and hold the Bank harmless of any loss or alleged loss of said money, coin or currency." (*See* Statement of Facts at ¶ 7; Amended Lease at DEFENDANT 000089).

In circumstances such as those presented in this Action, New York courts have routinely upheld the terms of safe deposit lease agreements, and find that lessees are conclusively bound by the terms therein:

> The terms set forth in the safe-deposit box lease executed by [the] plaintiff constitute a valid contract between the parties herein.   In our opinion, the lease provision prohibiting the deposit of money in the box is neither unconscionable nor offensive to public policy which imposes no limitation or restriction on the freedom of contract between a bank and its depositors. . . . [The] [p]laintiff, having executed the lease, is, in the absence of fraud or undue influence, conclusively bound by the terms therein.  (internal citations omitted)

*Radelman v. Mfrs. Hanover Trust Co*., 61 Misc. 2d 669, 669-670, 306 N.Y.S.2d 638 (2d Dep't 1969); *Rodriguez v. Banco Popular N. Am.,* 2014 N.Y. Misc. LEXIS 3417, *2-3, 2014 NY Slip Op. 32003[U], *2-3 (Sup. Ct. Queens County June 10, 2014) (dismissing action seeking damages alleged to have been incurred when money deposited in the plaintiff's safe deposit box went

12

missing on grounds that the lease agreement prohibited the plaintiff from using the safe deposit box to store money).

The decision in *Uribe v. Merchants Bank*, 91 N.Y. 336, 693 N.E.2d 740 (1998) is particularly instructive.  In *Uribe*, on appeal from an order granting the defendant's motion for partial summary judgment dismissing the plaintiff's claim against the defendant-bank regarding currency allegedly missing from the plaintiff's safe-deposit box, the New York Court of Appeals stated that "[i]t is universally understood and accepted that a bank is authorized to rent safe-deposit boxes 'upon such terms and conditions as may be prescribed' . . . To be sure, the commercial terms may not be unconscionable or violate of a supervening public policy." *Id.* at 341 (internal citations omitted).  The Court of Appeals in *Uribe* affirmed the Appellate Division's grant of summary judgment, holding that "the safe-deposit box rental agreement, used and controverted in this case, excludes cash, currency or legal tender and provides the bank with a cognizable rejection of *Uribe's* claim for loss of that kind of contents of from the safe-deposit box." *Id.* at 341.

Here, as in *Uribe*, Plaintiffs' claims arising from the alleged loss associated with the storing of prohibited items in the SDB should be rejected, and their claims dismissed in their entirety.  *See id.  See also Martin v. Citibank, N.A.,* 2008 N.Y. Misc. LEXIS 9631, 2008 NY Slip Op 33398(U) (Sup. Ct. N.Y. County Dec. 15, 2008) (finding that a provision in the safe deposit lease agreement prohibiting the deposit of currency is enforceable and granting the defendant bank's motion for partial summary judgment dismissing the plaintiff's claim for the loss of $8,000 in cash from the plaintiff's safe deposit box).

### C.    Plaintiffs' First Cause Of Action, For Negligence, Is Factually And Legally Unsupported And Should Be Dismissed

Plaintiffs' negligence claim is factually and legally unsupported and should be dismissed pursuant to Rule 56 on the grounds that the relationship between Plaintiffs and Chase is contractual

in nature, and Plaintiffs have failed to identify any duty owed by Chase to Plaintiffs with regard to the SDB independent of the duties set forth in the Lease. *See Sagendorph v First Natl. Bank*, 218 A.D. 285, 286, 1926 N.Y. App. Div. LEXIS 5916 (3d Dep't 1926) (affirming dismissal of the plaintiff's negligence cause of action on the ground that the contract governing the safe deposit box governed the bank's duties regarding the box, and common-law negligence claims were held inapplicable).  Plaintiffs' negligence claim therefore must be dismissed.  *See id.*

Moreover, New York law precludes a plaintiff from maintaining an action in negligence against a bank based solely on the breach of a contractual duty.  *See Calisch Assoc., Inc. v Mfrs. Hanover Trust Co.,* 151 A.D.2d 446, 447, 542 N.Y.S.2d 644, 645 (1st Dep't 1989) (dismissing the plaintiff depositor's negligence claim against the defendant bank on the ground that "[a] cause of action for negligence cannot be based on a breach of a contractual duty"); *Hartsko Fin. Servs., LLC v. JPMorgan Chase Bank, N.A.*, 125 A.D.3d 448, 448, 999 N.Y.S.2d 740, 740 (1st Dep't 2015) (affirming dismissal of negligence cause of action against defendant bank and stating that "[w]hether the first cause of action is denominated negligence or gross negligence, it was correctly dismissed because defendant had no duty to plaintiff independent of the contract formed when the account was opened").

Accordingly, Plaintiffs' First Cause of Action, for negligence, should be dismissed pursuant to Rule 56.

### D.   Plaintiffs Have Failed To Identify Any Facts Demonstrating That Chase Breached The Terms Of A Contract

Plaintiffs have failed to, and cannot, identify sufficient evidence to demonstrate that Chase breached the terms of the Lease, or any other agreement.  To the contrary, the undisputed evidence establishes that Chase was contractually authorized to terminate the Lease for failure to pay the annual rent after mailing written notice to Plaintiffs to the addresses that Chase has on file for the

SDB.  Chase complied with its contractual obligations, and mailed Plaintiffs multiple notices to the addresses Chase had on file concerning the overdue annual rent and the fact that the SDB would be drilled if the rent was not paid by April 18, 2018. (*See* Andews Decl., at ¶¶ 3-9 and Exhibits "A" though "E"; Statement of Facts at ¶¶ 20-27).  Further, pursuant to the terms of the Lease, Chase was authorized to, "after observing the time prescribed by applicable law and/or regulation, gain access to the box and remove, list and store its contents as required by state law." (*See* Lease at p. 1; Statement of Facts at ¶ 10).

Moreover, although Plaintiffs imply that the $250,000 in cash was somehow removed and taken by Chase's representatives, Plaintiffs have failed to identify any actual evidence supporting their claim, because none exists.[7]   Therefore, Plaintiffs' breach of contract claim must be dismissed, as a matter of law. *See Barker v. Time Warner Cable, Inc*., 83 A.D.3d 750, 751, 923 N.Y.S.2d 118 (2d Dep't 2011) ("In order to state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the provisions of the contract that were breached."); *767 Third Ave. LLC v. Greble & Finger, LLP*, 8 A.D.3d 75, 75, 778 N.Y.S.2d 157 (1st Dep't 2004) (failure to identify any portion of the lease allegedly breached was fatal to cause of action for breach of contract); *Sklover & Donath, LLC v. Eber-Schmid*, 71 A.D.3d 497, 498, 897 N.Y.S.2d 62, 63 (1st Dep't 2010 (dismissing the defendants' counterclaim for breach of contract because defendants "were unable to identify the terms of the agreement allegedly breached").

---

[7] As discussed *infra*, at pages 19 to 21, Lewis' conclusory, self-serving and unsupported testimony that he stored $250,000 in cash in the SDB does not constitute evidentiary proof in admissible form sufficient to raise an issue of material fact.  *See Golomb v. North Fork Bank*, 824 N.Y.S.2d 754, 2006 N.Y. Misc. LEXIS 2691 (Dist. Ct. Nassau County 2006) (in circumstances nearly identical to those presented in this Action, the court granted the defendant bank's motion for summary judgment, holding that the plaintiff's "self-serving and conclusory" statements regarding the alleged storage of gold bars and coins in a safe deposit box were insufficient to raise an issue of fact connecting the plaintiff's "alleged purchase of gold coins and bars to the placement of them into the bank").

**E.      Plaintiffs' Breach Of Bailment Claim Is Disclaimed Under The Lease And Contrary To New York Law**

The Third Cause of Action set forth in the Complaint, for breach of bailment, should be dismissed pursuant to Rule 56, on the grounds that the claim is expressly disclaimed under the Lease.  As clearly stated in the Amended Lease, the agreement "does not create a bailor and bailee relationship between [Plaintiffs] and the Bank.  [Chase] does not have knowledge of and [Chase] does not exercise supervision over the box, or over examination or removal of any of its contents.  [Plaintiffs] assume all risks of injury, loss or damage of any kind . . . ." (*See* Statement of Facts at ¶ 9; Amended Lease at DEFENDANT 000086).  Accordingly, the Lease did not create a bailor-bailee relationship with Chase, and Chase therefore cannot be found liable for breach of bailment.  *See Greco v. First Nat'l Bank Corp.*,   267 A.D.2d. 278, 701 N.Y.S.2d 93 (2d Dep't 1999) (affirming the trial court's order granting summary judgment for the defendant bank on the plaintiff's negligence claim where the bank's safe deposit box agreement limited the bank's liability as a bailee).

Further, even assuming, *arguendo,* the Amended Lease did not contain an express disclaimer of a bailor-bailee relationship, Chase would *still* not be liable for breach of bailment.  Under established New York law, the relationship between a lessee of a safe deposit box and a bank "can be distinguished from the traditional bailor/bailee relationship in that, although the bank retains possession of the safety box, the bailor also retains the ability to access its property on the premises of the bailee."  *See Golomb v. N. Fork Bank*, 2006 NYLJ LEXIS 5130, at *4-5 (Dist. Ct. Nassau County Oct. 19, 2006).  Under such circumstances, where a bailee bank allegedly fails to return the bailor lessee's property, New York courts have found the "inference of negligence on the bailee to be inequitable, as the bank does not retain exclusive control over the safety deposit box." *Id. at *5.  See also Rodriguez v. Banco Popular N. Am.*, 2014 N.Y. Misc. LEXIS 3417 at

16

*2-3 (Sup. Ct. Queens County June 6, 2014) (dismissing the plaintiff's negligence, conversion and breach of bailment claims on grounds that "[b]are allegations are insufficient to support such causes of action . . . and [because] it was the plaintiffs themselves who violated the agreement at the very outset, depositing a large sum of cash into a deposit box after signing an agreement that specifically prohibited the storing of such items within the bank's vault.").

Accordingly, Chase respectfully requests that Plaintiffs' Third Cause of Action be dismissed.

### F.    Plaintiffs Have Failed To Establish The Existence Of A Fiduciary Relationship

Under prevailing New York law, "the rental of a safe deposit box does not create a fiduciary relationship in New York." *Pecoraro v M&T Bank Corp.*, 11 A.D.3d 950, 951 (4th Dep't 2004) (citing *Carples v. Cumberland Coal & Iron Co.,* 240 N.Y. 187, 192-193, 148 N.E. 185 (1925)). *See also Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n,* 731 F.2d 112, 122 (2d Cir. 1984) (affirming dismissal of breach of fiduciary duty claim against bank-defendant, and stating that "New York law is clear that the usual relationship of bank and customer is that of debtor and creditor.")(citing *Solicitor for Affairs of His Majesty's Treasury v. Bankers Tr. Co*., 304 N.Y. 282, 107 N.E.2d 448 (1952)).

Instead, the relationship between a bank and its depositor is generally defined by the applicable contract. *See Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 57 N.Y.2d at 444 ("[T]he underlying relationship between a bank and its depositor is the contractual one of debtor and creditor. . . ."); *Bank Leumi Trust Co. v. Block 3102 Corp.*, 180 A.D.2d 588, 589, 580 N.Y.S.2d 299, 301 (1st Dep't 1992).  Moreover, to demonstrate the existence of a fiduciary relationship between a depositor and its bank, a plaintiff must first establish the existence of a duty "independent of any contractual obligations." *2006 Frank Calandra, Jr. Irrevocable Trust v.*

*Signature Bank Corp.,* 816 F. Supp. 2d 222, 239 (S.D.N.Y 2011) (citing *Clark-Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 389-390, 516 N.E.2d 190 (1987).

As this Court held in *Acevado v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 40242, *37-38 (S.D.N.Y. Mar. 23, 2012):

> [T]he bank-depositor agreement standing alone creates no fiduciary relationship between the parties." *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp.2d 632, 640 (E.D.N.Y. 2000)(citing *Aaron Ferer*, 731 F.2d at 122 (under New York law the "usual relationship" of bank and depositor is based on contractual principles, and involves no fiduciary duty from bank to depositor).
>
> Here, Plaintiffs have alleged no facts demonstrating that a fiduciary relationship exists between them and Citibank.  "Indeed, [plaintiffs have] failed to allege anything more than a relationship of depositor to bank – precisely the contractual sort of relationship that, by itself, supports no further allegation of fiduciary breach."

*Id.* at *37-38 (quoting *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp.2d 632, 640 (E.D.N.Y. 2000).

Plaintiffs have failed to identify *any* evidence of the existence of a duty that could be construed as independent of the obligations set forth in the Lease – the contract that defines the relationship between Chase and Plaintiffs with regard to the rental of the SDB.  Plaintiffs therefore cannot establish that Chase owed Plaintiffs any fiduciary duties, much less breached those duties. *See id.  See also Pecoraro*, 11 A.D. 3d at 951; *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 389-390. Accordingly, Plaintiffs' Fourth Cause of Action, for breach of fiduciary duty, should be dismissed pursuant to Rule 56.

### G.   Plaintiffs' Conversion Claim Should Be Dismissed, As A Matter Of Law

Plaintiffs' Fifth Cause of Action, for conversion, should be dismissed pursuant to Rule 56 because Plaintiffs have failed to satisfy the standard to establish the requisite elements of the claim under New York law.  As the New York Court of Appeals has stated, "[a] conversion takes place

when someone, intentionally and without authority, assumes or exercise control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. NY Organ Donor Network, Inc*., 8 N.Y.3d 43, 49-50, 860 N.E.2d 713 (2006). *See also Pappas v. Tzolis,* 20 N.Y.3d 228, 234 (2012) ("Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, derogation of plaintiff's rights.")(citations omitted).

Here, Chase's act of drilling the SDB was completely within its authority pursuant to the terms and conditions set forth in the Lease.  (*See* Statement of Facts at ¶ 10; Amended Lease at DEFENDANT 000085). Therefore, to the extent that Chase exercised control of Plaintiffs' property, Chase was fully authorized under the Lease to drill the SDB.  Moreover, Plaintiffs have failed to identify any evidence, aside from Lewis' self-serving deposition testimony and factually unsupported allegations, establishing that the alleged missing $250,000 in cash was actually present inside the SDB at the time that it was drilled.  As a result, Plaintiffs are unable to establish that Plaintiffs' property was taken by Chase.  Accordingly, Plaintiffs' conversion claim should be dismissed, pursuant to Rule 56.  *See Colavito*, 8 N.Y. 3 d at 49-50; *Rodriguez*, 2014 N.Y. Misc. LEXIS 3417 at *2-3 (dismissing the plaintiff's conversion claim on the grounds that "[b]are allegations are insufficient to support such causes of action").

## H.      Plaintiffs Cannot Establish That They Have Suffered Damages

Plaintiffs' claims should be dismissed in their entirety on the grounds that Plaintiffs have failed to, and cannot, factually support their allegations that they stored $250,000 in cash in the SDB, or that the alleged missing cash was inside of the SDB on the date it was drilled.

The facts and circumstances in *Golomb v. North Fork Bank*, 824 N.Y.S.2d 754, 2006 N.Y. Misc. LEXIS 2691 (Dist. Ct. Nassau County 2006), are nearly identical to those presented in this

Action.  In *Golomb*, the plaintiffs had leased a safe deposit box from the defendant bank, but later moved and failed to pay their annual rental fee.  *Id.* at *3.  As Chase did in this Action, the bank in *Golomb* sent notices of the default to the address that it had on file for the safe deposit box, an address at which the plaintiffs no longer lived.  The notices were returned to the bank as undeliverable, and the bank ultimately drilled the box and removed the plaintiffs' property from the box according to the bank's procedures.  *Id.*  When the plaintiffs later learned that the safe deposit box had been emptied and its contents held by the bank, the plaintiffs alleged that certain gold coins and gold bars had been stolen from the safe deposit box as a result of the bank's negligence.  *Id.* at *1.

The bank in *Golomb* moved for summary judgment, arguing, *inter alia,* that "the plaintiffs have failed to submit proof in admissible form that proves that they owned the alleged gold bars and coins and the extent of damages cannot be determined."  *Id.* at *4.  The court granted summary judgment dismissing the action, noting that "when a bank rents a safety deposit box to a customer a bailor/bailee relationship is created."  *Id.* at *5.  However, the court stated that such a relationship "can be distinguished from the traditional bailor/bailee relationship, in that, although the bank retains possession of the safety box . . . the bailor is the only individual with the knowledge of the contents of the box and the bailee has no way of knowing what is placed into the box and removed therefrom."  *Id.*

The *Golomb* court also deemed the affidavits submitted by the plaintiffs purporting to show that they had owned gold coins and gold bars as self-serving and conclusory:

> The plaintiff, Perla Golomb's affidavit is self serving and conclusory (*see, Kowalsky v Khan*, 279 A.D.2d 556, 719 N.Y.S.2d 666 [2001]).  Mrs. Golomb states, "I hereby reaffirm under oath that our Krugerands and gold bars were in our safe deposit box when I went into the box for the last time before we moved; and they were not removed. Someone took them when our box was broken open whether defendants or one of the two men they let

into the vault on January 20, 2005. . ." (*see*, Affidavit of Perla Golomb, P10). Mere conclusory allegations of the existence of a triable issue of fact are insufficient to defeat an otherwise well founded motion for summary judgment (see, *Bowman v. Chasky*, 30 A.D.3d 552, 2006 NY Slip Op 4978, 817 N.Y.S.2d 153 [2d Dept]; *Castro v. New York University*, 5 A.D.3d 135, 773 N.Y.S.2d 29 [1st Dept 2004];*Grullon v. City of New York*, 297 A.D.2d 261, 747 N.Y.S.2d 426 [1st Dept 2002]). The affidavit contains only self-serving statements which are conclusory and irrelevant to the issue at bar. Thus, there is a failure to tender evidentiary proof in admissible form.

*Id.* at * 16.   Thus, the court held that the plaintiffs had failed to tender evidentiary proof in admissible form sufficient to raise an issue of fact connecting their "alleged purchase of gold coins and bars to the placement of them into the bank."  *Id.* at *17.

Here, as in *Golomb,* Plaintiffs have failed to, and cannot, establish that they placed $250,000 in cash in the SDB, except by offering conclusory and self-serving affidavits and deposition testimony by Lewis.  Indeed, no other witness has been identified who saw the alleged contents of the Black Case, and there is no photographic or other documentary evidence establishing that the Black Case contained $250,000 in cash on the date the SDB was drilled. Accordingly, the Complaint should be dismissed, in its entirety, pursuant to Rule 56.  *See id.*

## I.     Even If Plaintiffs' Could Establish A Cause Of Action Against Chase, Plaintiffs Damages Should Be Limited To $25,000

In the event that the Court does not grant Chase's motion for summary judgment dismissing Plaintiffs' claims pursuant to Rule 56, any claim for damages at trial should be limited to those provable and direct damages Plaintiffs are able to establish, in an amount no greater than $25,000.

In that regard, the Lease provides:

**THE BANK WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, CONSEQUENTIAL OR EMOTIONAL DAMAGES REGARDLESS OF THE FORM OF ACTION. YOU AGREE AND REPRESENT THAT THE AGGREGATE VALUE OF THE CONTENTS OF THE BOX WILL NOT EXCEED $25,000 AT ANY TIME AND BASED ON THIS REPRESENTATION FURTHER ACKNOWLEDGE AND**

**AGREE THAT THE BANK'S MAXIMUM LIABILITY, IF ANY, WILL BE LIMITED TO $25,000 WITH RESPECT TO ANY CLAIM ARISING OUT OF, OR OTHERWISE CONNECTED WITH, THIS AGREEMENT, THE BOX OR ITEMS STORED IN THE BOX.**

(*See* Statement of Facts at ¶ 9; Amended Lease at DEFENDANT 000086) (emphasis in original).

Therefore, in the event that the Court does not dismiss Plaintiffs' claims on this Motion, the Court should, nevertheless, at a minimum, limit Chase's maximum liability to $25,000. *See Goldbaum v. Bank Leumi Trust Co.*, 543 F. Supp. 434, 436 (S.D.N.Y. 1982) (holding that, under New York law, "[safe deposit] lease agreements will be enforced provided that they are not unconscionable, offensive to public policy nor the product of fraud or undue influence.").

### J.    Plaintiffs' Claim For Punitive Damages Fails, As A Matter Of Law

New York courts have consistently held that the standard for awarding punitive damages is extremely strict, and that such damages are an extraordinary remedy available "only in a limited number of instances." *See Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 613, 634 N.E.2d 940 (1994) (citing *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976)).  As the New York Court of Appeals has held, "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova*, 83 N.Y.2d at 613.  Indeed, where the underlying harm stems from a breach of contract, punitive damages are only available "where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious . . . . to warrant the additional imposition of exemplary damages." *Id.*  As a result, punitive damages are only allowed "in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives." *Walker v. Sheldon*, 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 490, 179 N.E.2d 497, 498 (1961).

Further, "[t]o sustain a claim for punitive damages in tort, one of the following must be shown: intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." *Don Buchwald & Assocs. v. Rich*, 281 A.D.2d 329, 330, 723 N.Y.S.2d 8, 9 (1st Dep't 2001). *See Amusement Indus. v. Stern*, 693 F. Supp. 2d 301, 317 (S.D.N.Y. 2010) (same).

Plaintiffs have failed to identify any facts in the record that suggest, much less establish, that Chase intentionally breached the terms of Lease through some morally culpable or evil act. Nor can Plaintiffs identify any facts that could support a conclusion that Chase intentionally, with a fraudulent or evil motive, consciously acted in a way that willfully and wantonly disregards the rights of another.  In the absence of such evidence, Plaintiffs' claim for punitive damages fails, as a matter of law. *See Rocanova*, 83 N.Y.2d at 613-14; *Don Buchwald & Assocs.*, 281 A.D.2d at 330; *Amusement Indus. v. Stern*, 693 F. Supp. 2d at 317.

## CONCLUSION

By reason of the foregoing, since no genuine issue exists as to any material fact precluding summary judgment, defendant, JPMorgan Chase Bank, N.A., respectfully requests that, the Court issue an Order, pursuant to Federal Rules of Civil Procedure Rule 56, dismissing the Complaint in its entirety, with prejudice, and granting Chase such other and further relief as this Court deems just, proper and equitable.

Dated: April 22, 2020
      New York, New York

                  SILLS CUMMIS & GROSS P.C.

                  By: /s/ Tyler J. Kandel
                      Tyler J. Kandel
                      Lauren C. Watson
                      101 Park – 28th Floor
                      New York, New York 10178
                      (212) 643-7000
                      *Attorneys for Defendant*
                      *JPMorgan Chase Bank, N.A.*